ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| CLARIBEL RAMOS PADILLA<br><br>Peticionaria<br><br>v.<br><br>DIRECTOR ADMINISTRATIVO DE LOS TRIBUNALES<br><br>Recurrida | **KLCE202401050** | *CERTIORARI* procedente de LA Junta del Poder Judicial de Puerto Rico<br><br>Civil Núm.: Q-19-13<br><br>Sobre: Reclasificación |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico a 24 de octubre de 2024.

Comparece ante este foro la Sra. Claribel Ramos Padilla (señora Ramos o "la peticionaria") y nos solicita que revisemos una *Resolución* emitida por la Junta de Personal de la Rama Judicial ("la Junta") notificada el 29 de agosto de 2024. En virtud de esta, la Junta declaró *No Ha Lugar* a la *Moción en Solicitud de Desparalización del Caso y Continuación de los Procedimientos*.

Por los fundamentos que se exponen a continuación, **DENEGAMOS** el recurso de *Certiorari* de epígrafe.

### I.

El 28 de octubre de 2019, la señora Ramos presentó una *Querella* sobre reclasificación de puesto ante la Junta.[1] En esencia, alegó que en marzo de 2012 fue seleccionada para ocupar el puesto de Técnico de Sistemas de Oficina II, en la Oficina de Inspección de

---

[1] *Véase, Sentencia* emitida por un panel hermano el 14 de mayo de 2021, alfanumérico KLCE202100391.

Número Identificador
RES2024 _____

Notarías, Registro General de Poderes y Testamentos. No, obstante, arguyó que se abrió una convocatoria para el puesto de Técnico de Inspección de Notarías II en diciembre de 2018, en la cual participó y obtuvo una calificación en el examen de 97%. Sostuvo que estaba realizando tareas del puesto de Técnico de Inspección de Notarías II, sin la remuneración correspondiente al puesto en los siete años y medio que había laborado en el puesto que ocupaba. Por todo lo anterior, solicitó ser reclasificada al puesto de Técnico de Inspección de Notarías II, de manera retroactiva al 2012, con el ajuste de salario correspondiente a la fecha en que comenzó a laborar, a saber, el 2012.

Posteriormente, 18 de agosto de 2020, la peticionaria presentó una *Querella Enmendada* a los fines de que la reclasificación del puesto y/o diferencial de sueldo fuese retroactivo al 13 de junio de 2019, en lugar del 2012. Así las cosas, el 29 de septiembre de 2020, la Junta acogió la *Querella Enmendada* y ordenó a que el Director Administrativo de los Tribunales (Director Administrativo) presentara su contestación.[2]

Tras varios trámites procesales, el 29 de octubre de 2020, el Director Administrativo presentó una *Comparecencia Especial en Aviso de Paralización*.[3] Adujo que, la peticionaria solicitaba un remedio que tendría un impacto económico en el caudal del Estado Libre Asociado de Puerto Rico (ELA), el cual estaba cobijado por la paralización de las secciones 362 y 922 de la *Puerto Rico Oversight, Management, and Econonomic*

---

[2] *Véase, Sentencia* emitida por un panel hermano el 14 de mayo de 2021, alfanumérico KLCE202100391.
[3] *Comparecencia Especial en Aviso de Paralización* Anejo II, págs. 8-25, del apéndice del recurso.

*Stability Act* (PROMESA), 48 USC secs. 2101, *et seq.* Además, esbozó que la paralización era aplicable al caso de epígrafe, por lo que la Junta estaba privada de jurisdicción. Por todo lo anterior, razonó que procedía decretar la paralización del caso al amparo de PROMESA y ordenar la desestimación del caso.

En desacuerdo, el 6 de noviembre de 2020, la señora Ramos presentó su *Moción en Oposición a Aviso de Paralización al Amparo Ley Promesa*.[4] En esencia, planteó que la *Querella* y la *Querella Enmendada* se presentaron previo a la petición de quiebras. Asimismo, aclaró que, no fue hasta el mes de diciembre de 2018, al publicarse una convocatoria al puesto de Técnico de Inspección de Notarías II, que advino en conocimiento que las funciones que estaba realizando desde el 2012, eran propias de dicho puesto. Por ello, argumentó que no pudo haber presentado su solicitud de reclasificación, ni la *Querella*, previo a la petición de quiebras el 3 de mayo de 2017. Por último, señaló que no era aplicable la sección 362 de PROMESA, toda vez que prohibía el comienzo o continuación de un procedimiento administrativo, anterior a la petición de quiebra, o que pudo haber sido presentada antes de la misma. Sostuvo que aplicar dicha sección a la controversia, propiciaba una violación de sus derechos de estar correctamente clasificada y retribuida y, perpetuaba la idea de que el Director Administrativo podía violentar el principio de mérito durante la vigencia de PROMESA.

Luego de examinar los argumentos presentados por las partes, el 15 de diciembre de 2020, la Junta emitió

---

[4] *Moción en Oposición a Aviso de Paralización al Amparo Ley Promesa*, Anejo III, págs.

una *Resolución* en la cual determinó que estaba ante unos hechos que ocurrieron con posteridad a la presentación de la petición de la quiebra.[5] Por tanto, resolvió que no procedía la paralización de la *Querella*. En virtud de lo anterior, declaró *No Ha Lugar* al aviso de paralización y ordenó la continuación de los procedimientos.

Inconforme con la determinación del 15 de diciembre de 2020, el Director Administrativo presentó un recurso de *Certiorari* ante este foro, al cual se le asignó el alfanumérico KLCE202100391. En específico, formuló el siguiente señalamiento de error:

> Erró la Junta de Personal y actuó sin jurisdicción al pretender levantar la paralización automática impuesta a este caso por PROMESA, cuando correspondía decretar su archivo administrativo, hasta que concluya el proceso de quiebra o hasta que el tribunal federal levante la paralización, particularmente ante la falta de jurisdicción para entender en los méritos del caso.

Atendido el recurso, un panel hermano expidió el auto y dictó *Sentencia* el 14 de mayo de 2021, revocando la determinación recurrida. En síntesis, dicho panel resolvió que la causa de acción de la peticionaria se originó en el 2012, año desde el cual comenzó a realizar funciones que resultaban idénticas a las del puesto para el cual compitió en el 2018. Enfatizó que, las querellas retrotraían la causa de acción a un momento previo a la presentación de la quiebra, el 2012. Es decir, las propias alegaciones de la señora Ramos identificaban el momento del nacimiento de la causa de acción en el 2012.

Cónsono con lo anterior, este foro intermedio concluyó que la *Querella Enmendada* delató el verdadero

---

[5] *Resolución*, Anejo IV, págs. 30-34 del apéndice del recurso.

propósito de la peticionaria. Entiéndase, la pretensión de evadir la paralización del pleito por la Ley PROMESA, ante la realidad de que la causa de acción nació antes de ser presentada la petición de quiebra. Por último, enfatizó que la determinación sobre la paralización que ordenaba la PROMESA estaba determinada por el origen de la causa de acción, no por el momento en que se advino en conocimiento de su posible ejercicio. Por todo lo anterior, paralizó el caso.

Así las cosas, el 11 de septiembre de 2023, la señora Ramos presentó una *Moción en Solicitud de Desparalización del Caso y Continuación de los Procedimientos*.[6] Alegó, que el caso de epígrafe era una reclamación de reclasificación que conllevaba un componente retributivo de aumento salarial. Adicionalmente, planteó que era un beneficio de empleo y no contenía ninguna reclamación en daños y perjuicios, por lo que cumplía con todos los requisitos para ser un *compensation claim* y estaba exenta de presentar el *proof of claim*. No obstante, el 20 de septiembre de 2023, la Junta notificó una *Orden* en la cual indicó lo siguiente:

> El 1 de julio de 2021 se emitió el Mandato del Tribunal de Apelaciones sobre la sentencia emitida el 14 de mayo de 2021 en la querella que nos ocupa. En la parte dispositiva de dicha sentencia, se dispuso lo siguiente:
>
> > "Por los fundamentos expresados, se expide el auto de certiorari solicitado y revocamos la determinación recurrida. De conformidad, ordenamos la paralización de todos los procedimientos en este caso, al amparo del Título III de la ley PROMESA. Se ordena también su archivo administrativo hasta que, a petición de parte, proceda la reanudación de los procedimientos en virtud de esa legislación".

---

[6] *Moción en Solicitud de Desparalización del Caso y Continuación de los Procedimientos*, Anejo VI, págs. 46-64 del apéndice del recurso.

A tenor con lo anterior, la Junta resolvió que la *Querella* estaba archivada administrativamente y concedió al recurrido el término de treinta (30) días para que expresara su posición.[7]

Conforme ordenado, el 19 de octubre de 2023, el Director Administrativo presentó su *Escrito en Cumplimiento de Orden*.[8] Enfatizó que, el Tribunal Federal era quien tenía jurisdicción exclusiva para interpretar el *injunction* permanente que se emitió el 15 de marzo de 2022. Sostuvo que procedía que la peticionaria obtuviese una determinación de dicho Tribunal en cuanto a la inaplicabilidad del interdicto. Ello, para poner a la Junta en posición de atender su reclamo. De igual forma, resaltó que, desde el 14 de mayo de 2021, este foro intermedio refirió a la señora Ramos al foro federal. Sin embargo, apuntó que esta no recurrió al foro federal para solicitar la continuación de los procesos. El 20 de octubre de 2023, la peticionaria presentó su *Réplica a Escrito en Cumplimiento de Orden de la Parte Querellada*.[9]

El 21 de mayo de 2024, la Junta celebró una vista y ordenó a las partes a presentar memorandos de derecho, respecto a lo discutido sobre PROMESA.

En cumplimiento con lo ordenado, el 15 de julio de 2024, el Director Administrativo presentó su *Memorando de Derecho* en el cual reiteró sus argumentos del *Escrito en Cumplimiento de Orden* de 19 de octubre de 2023.[10] Aclaró que, el plan de ajuste se emitió conforme a la

---

[7] *Orden,* Anejo VII, págs. 65-66 del apéndice del recurso.
[8] *Escrito en Cumplimiento de Orden*, Anejo VIII, págs. 66-69 del apéndice del recurso.
[9] *Réplica a Escrito en Cumplimiento de Orden de la Parte Querellada*, Anejo IX, págs. 70-78 del apéndice del recurso.
[10] *Memorando de Derecho*, Anejo X, págs. 79-82 del apéndice del recurso.

*Orden de Confirmación* que emitió el Tribunal Federal el 18 de enero de 2022. Sostuvo que, el plan de ajuste dio lugar a varios interdictos del Tribunal Federal para impedir el cobro de diversas causas de acción contra el Gobierno. Por último, señaló que la peticionaria justificaba su solicitud en mociones y órdenes de la Corte de Distrito cuya aplicabilidad no le correspondía a la Junta por consideraciones jurisdiccionales. Por todo lo anterior, reiteró que procedía mantener la paralización del pleito.

Por su parte, el 16 de julio de 2024, la señora Ramos presentó su *Memorando de Derecho*.[11] En síntesis, arguyó que las órdenes del Tribunal de Distrito establecieron que las reclamaciones administrativas de empleados públicos debían permanecer en los foros administrativos. Añadió que, el párrafo 59 de la *Orden de Confirmación*, no le aplicaba a las reclamaciones administrativas de principio de mérito.

Evaluadas las mociones y argumentos de las partes, el 29 de agosto de 2024, la Junta notificó su *Resolución* en la cual declaró *No Ha Lugar* a la *Moción en Solicitud de Desparalización del Caso y Continuación de los Procedimientos*.[12] Aclaró que, la *Sentencia* que emitió este Tribunal de Apelaciones el 14 de mayo de 2021, alfanumérico KLCE202100391, constituía le ley del caso, lo que impedía que la controversia sobre la desparalización pudiese ser atendida por la Junta.

Inconforme aún, el 27 de septiembre de 2024, la señora Ramos presentó el recurso que nos ocupa. Mediante

---

[11] *Memorando de Derecho*, Anejo XI, págs. 83-89 del apéndice del recurso.
[12] *Resolución*, Anejo I, págs. 1-7 del apéndice del recurso.

este, adujo que el foro primario cometió el siguiente error:

> Erró la Junta de Personal de la Rama Judicial al determinar que no puede continuar los procedimientos del caso que fue paralizado al amparo del Título III de la Ley PROMESA ya que, conlleva analizar e interpretar las órdenes del Tribunal de Distrito y sería una actuación inconsistente con los pronunciamientos del Tribunal de Apelaciones en su Sentencia.

El 9 de octubre de 2024, emitimos una *Resolución* concediéndole a la parte recurrida quince (15) días, desde la presentación del recurso para que presentara su oposición. Conforme ordenado, el 23 de octubre de 2024, el Director Administrativo presentó su *Escrito en Cumplimiento de Orden*. Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

**II.**

**-A-**

El 30 de junio de 2016, entró en vigor la ley denominada *Puerto Rico Oversight, Management, and Econonomic Stability Act* (PROMESA), 48 USC secs. 2101, *et seq.* La referida legislación busca brindar al Estado Libre Asociado de Puerto Rico y sus agencias e instrumentalidades acceso a los procesos judiciales de reestructuración de deuda. Véase, R. Emanuelli Jiménez, *PROMESA*, 1ra ed., Puerto Rico, Ed. SITUM, 2017, pág. 48. En lo pertinente, el Título III de PROMESA permite que ciertas entidades del ELA denominadas "*covered entities*" puedan hacer una petición de quiebra por conducto de la Junta de Supervisión Fiscal.

La Sección 301 de PROMESA, 48 USC sec. 2161, incorporó a dicha ley las disposiciones concernientes a

las paralizaciones automáticas del Código de Quiebras de los Estados Unidos, según recogidas en sus secciones 362(a) y 922(a). Véase, 11 USC secs. 362(a) y 922(a). Al amparo de las precitadas secciones, una vez alguna de las entidades cubiertas hiciera su petición de quiebra ante el Tribunal de los Estados Unidos para el Distrito de Puerto Rico, se activaría una paralización sobre todas las acciones civiles, administrativas o de otra índole que se intentaran iniciar o se hubieran iniciado contra la entidad con anterioridad a la fecha de la petición de quiebra. Dicha paralización beneficiaría únicamente a la entidad que presentó la solicitud de quiebra, salvo que el Tribunal de Distrito entendiera prudente extender la protección a otros codemandados en el pleito.

El 3 de mayo de 2017, el ELA presentó una Petición de Quiebra ante el Tribunal de Distrito de Puerto Rico al amparo del Título III de PROMESA. Como consecuencia, se activó una paralización a partir de la referida fecha sobre todos los procedimientos y causas de acción que surgieron con anterioridad al 3 de mayo de 2017, y en lo que respecta al ELA y a todas las agencias y departamentos por los que este tuviera que responder.

De otra parte, el 18 de enero de 2022, el foro federal, por voz de la Honorable Jueza Laura Taylor Swain, emitió el *Confirmation Order*, el cual entró en vigor el 15 de marzo de 2022. A raíz de dicha determinación, ese foro aprobó el plan de ajuste de la deuda de Puerto Rico, con lo cual concluyó la quiebra del ELA y garantizó, a su vez, el trato justo y equitativo de los acreedores.

En lo que nos compete, el párrafo 59 del *Confirmation Order* tiene el efecto de paralizar las reclamaciones pasadas, presentes y futuras de todas las entidades frente al deudor, que incluye aquellos hechos que se suscitaron con anterioridad a la petición de quiebra. Este párrafo dispuso un mecanismo de *injuction* permanente que, desde el 15 de marzo de 2022, sustituyó el efecto de la paralización automática que proveían las Secciones 362 y 922 del Código de Quiebras Federal, recogidas en la Sección 301 de PROMESA.

> 59. Injunction on Claims. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property.
>
> […]

Por igual, el plan de ajuste dispone que el *Confirmation Order* constituirá una determinación judicial a partir de su entrada en vigor.

> 92.2 Discharge and Release of Claims and Causes of Action:
> (a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title

III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

[…]

In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

De otro lado, el *Notice* presentado el 15 de marzo de 2022, en el procedimiento de quiebra ante el tribunal federal estableció como fecha límite el 13 de junio de 2022, para que los acreedores presentaran una solicitud de pago por reclamaciones de gastos administrativos. Esta estableció que el acreedor que fallase en presentar dicha solicitud, en o antes de la fecha límite del 13 de junio de 2022, quedaría vedado permanentemente de hacer valer su reclamación de pago contra el deudor.

> 1.51 Administrative Expense Claim: A Claim against the Debtors or their Assets constituting a cost or expense of administration of the Title III Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

No obstante, el 9 de septiembre de 2022, la Junta presentó ante el foro federal el escrito *Response of the Financial Oversight and Management Board to Urgent Motion for Extension of Administrative Expense Claim Bar Date and Proper Service of Process Request to be Heard.* Mediante el cual, propuso: (1) extender por noventa días la presentación de la solicitud de gastos administrativos a aquellos reclamantes post petición que pudieran probar que no fueron adecuadamente notificados del Notice; (2) publicar en varios periódicos la notificación de la extensión para presentar la solicitud de gastos administrativos, en español y en inglés, no

más tarde de catorce días después de la orden que declarara con lugar la moción; y, (3) excluir a cierto tipo de casos de la presentación de la solicitud de gastos administrativos; tales como, aquellos donde existieran reclamaciones contra el Gobierno que se encontrasen dentro de los límites estatutarios de $75,000.00 o $150,000.00.

Consecuentemente, el 20 de octubre de 2022, la Jueza Taylor Swain emitió el *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction*. En esta, la Corte de Título III extendió hasta el 18 de enero de 2023, la fecha límite para presentar la solicitud de gastos administrativos para aquellos con reclamaciones post petición que no hubieran sido adecuadamente notificados.

Asimismo, la Jueza Taylor Swain modificó el alcance del *Confirmation Order* para disponer que la solicitud de gastos administrativos no sería necesaria para ciertas reclamaciones post petición, entre ellas, los casos de daños instados al amparo de la *Ley de Pleitos contra el Estado*, siempre y cuando la reclamación no excediera los límites estatutarios. En armonía con esa determinación, el *injunction* fue modificado para autorizar la litigación de casos instados al palio de la *Ley de Pleitos contra el Estado*, hasta las etapas apelativas y la etapa de ejecución de sentencia.

Es decir, para que la enmienda al *Confirmation Order* pueda aplicarle a un litigante, será necesario que este alegue que su reclamación contra el Estado no excede los límites estatutarios. Inclusive, la enmienda le exime de presentar la notificación de gastos

administrativos, solo si su reclamación no excede los límites estatutarios.

-B-

La doctrina de la ley del caso está predicada en el principio de que las adjudicaciones que hacen los tribunales deben tener finalidad. *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136, 141 (1967). "[S]ólo los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, pueden constituir la ley del caso". *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005); *Mgmt. Adm. Servs, Corp. v. E.L.A.*, 152 DPR 599, 606-607 (2000). Esta doctrina aplica cuando dentro de un mismo caso existen dictámenes finales y firmes que no pueden reexaminarse posteriormente. *Íd*. Dicho de otro modo, aquellos derechos y obligaciones que han sido adjudicados mediante un dictamen judicial final y firme constituyen la ley del caso. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 9 (2016).

La doctrina de la ley del caso "solo puede invocarse cuando exista una decisión final de la controversia en sus méritos". *Pueblo de Puerto Rico v. Serrano Chang*, 201 DPR 643 (2018), citando a *Félix v. Las Haciendas*, supra. Cuando esta doctrina es de aplicación, tales derechos y obligaciones gozan de finalidad y firmeza, permitiendo que las partes en un pleito puedan proceder sobre determinaciones confiables y certeras. Por ello, los asuntos que han sido adjudicados -ya sea por el Tribunal de Primera Instancia o por un tribunal apelativo- no pueden ser reexaminados. Dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó, si el caso vuelve ante su consideración. *Íd*.

La doctrina de la ley del caso no es un mandato inflexible, sino que recoge la costumbre deseable de respetar como finales aquellas controversias sometidas, litigadas y decididas por un tribunal. Así, únicamente procede reexaminar un asunto ya adjudicado, en situaciones excepcionales, cuando la determinación previa sea errónea o pueda causar una grave injusticia. *Cacho Pérez v. Hatton Gotay*, supra. Por tanto, si el caso vuelve ante la consideración del tribunal y éste entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, dicho foro puede aplicar una norma de derecho distinta. *Cacho Pérez v. Hatton Gotay*, supra.

## III.

Es preciso comenzar por destacar que la *Resolución* recurrida, a pesar de ser un dictamen administrativo, es susceptible de revisión mediante un recurso de *Certiorari* por disposición del *Reglamento de la Junta de Personal del Poder Judicial*, 4 LPRA Ap. XIV(d).[13]

En síntesis, la peticionaria señaló que la Junta erró al determinar que no podía continuar los procedimientos del caso que fue paralizado al amparo del Título III de la PROMESA toda vez que, conllevaba analizar e interpretar las órdenes del Tribunal de Distrito, lo cual sería una actuación inconsistente con los pronunciamientos del Tribunal de Apelaciones en la *Sentencia* que se emitió el 14 de mayo de 2021.

---

[13] En lo pertinente, el Art. XIV del referido Reglamento dispone lo siguiente: La parte adversamente afectada por una orden o resolución de la Junta podrá presentar una petición de *certiorari* ante el Tribunal de Apelaciones, dentro del término jurisdiccional de treinta (30) días contados a partir de la fecha de la notificación de la orden o resolución de la Junta.

Sin embargo, luego de evaluar el recurso de epígrafe y revisar los documentos sometidos, a la luz de los criterios de nuestra Regla 40, *supra*, rechazamos ejercer nuestra jurisdicción revisora e intervenir con el criterio de la Junta para variar el dictamen recurrido. Recalcamos que, nuestro Tribunal Supremo ha sido enfático en que, como foros revisores, no debemos intervenir con las actuaciones de los foros primarios, en ausencia de que hayan actuado con prejuicio o parcialidad, o que hayan errado en la aplicación del derecho.

Así las cosas, a base de un análisis cuidadoso de la totalidad del expediente apelativo, no estamos en posición de concluir que la actuación recurrida fuese irrazonable, o contraria en derecho. Consecuentemente, tampoco podemos afirmar que dicha actuación fuese el resultado de abuso de discreción por parte de la Junta. Por tanto, procede denegar la expedición del auto discrecional solicitado.

**IV.**

Por los fundamentos antes expuestos, se **DENIEGA** el presente auto discrecional de *Certiorari.*

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones